UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                                  Case No. 8:10-CR-303-T-23MAP

PEDRO LORENZO FUENMAYOR-AREVALO
_____/

## REPORT AND RECOMMENDATION

After the Defendant entered his plea but before his scheduled sentencing date, his counsel moved to withdraw his plea over concerns about the Defendant's competency. With the benefit of an evidentiary hearing, I find the Defendant competent, both now and at the time of his guilty plea, and recommend that the motion to withdraw his guilty plea be denied.[1]

    *A. Background*

        *1. offense conduct and post-arrest statements*

The government asserts that in early June 2010 in Colombia, an unidentified coconspirator hired the vessel's captain (Defendant Daniel-Matos) and the shipment's drug representative (Defendant Meza-Sanchez) to smuggle 70 kilograms of cocaine aboard a fishing vessel. The captain hired three others including the Defendant to serve as the vessel's crew, with the Defendant acting as the mechanic. On June 9, 2010, the captain and his crew

---

[1] The district judge referred the Defendant's motion to withdraw his guilty plea (doc. 97) to me for a report and recommendation.

departed Santa Marta, Colombia aboard the F/V Pescamar I en route to meet another vessel carrying the cocaine. The next day, a go-fast vessel transferred the 70 kilograms to the Pescamar, which the crew presumably stored in the fish hold area. On June 15, 2010, the United States Coast Guard Cutter Bear intercepted the Pescamar approximately 70 nautical miles northeast of Cabo Gracias Dios, Honduras.

On June 22, the day before the Defendant's initial appearance to answer to the complaint filed in this district charging the Pescamar's captain and crew with conspiracy and possessing with intent to distribute five or more kilograms of cocaine aboard a vessel subject to the jurisdiction of the United States, the Defendant made post-arrest statements. He made these statements after the issuance of *Miranda* warnings and his written acknowledgment of those warnings. In summary, the Defendant stated he had been a mariner for forty years and had been paid $300,000 Colombian pesos to tend lines and perform basic maintenance on the Pescamar's diesel engine. He understood the trip would take four days, involved fishing for grouper off San Andres, and anticipated being rewarded with a portion of the fishing profits. Notably, he denied any knowledge of a smuggling venture before departing Colombia, said he trusted his captain, and claimed he did not know about the 70 kilograms hidden in the fish hold.

### 2.  *proffer and plea*

On August 26, 2010, a month after the grand jury returned the instant indictment, government agents, in the presence of his appointed counsel, debriefed the Defendant pursuant to a proffer agreement. The Defendant's account at this session differed from his June 22 version, which he said was spurred by the captain's instructions as to what to say.

The Defendant admitted the Pescamar's captain had paid him $1.5 million pesos for the voyage that would include some fishing and a stop near Barraquilla, Colombia to pick up 70 kilograms of cocaine.  Indeed, the Defendant acknowledged that during the transfer of the cocaine from the go-fast, the Defendant steered Pescamar.  The next day, the Coast Guard seized the Pescamar.  While on the cutter, the captain informed the crew what to say and that as captain, he would take responsibility.

On September 20, the Defendant appeared before me, with his counsel, and entered pleas of guilty to both counts of the indictment.  Nothing about the plea proceeding was remarkable.  The Defendant responded appropriately to my questions.  He noted he was 60 years old, could not read or write, had never been treated for any mental illness or drug addiction, and was not at the time under the influence of any drugs, medications, or alcoholic beverages.  No one had promised him anything in exchange for his plea, and he admitted that he had fully discussed the matter with his counsel beforehand.  He understood the penalties he faced, stated he understood the sentencing process as I had explained it to him, and that he understood the rights he was waiving by pleading guilty.  Lastly, he acknowledged an understanding of the charges and their essential elements.  When I asked him questions to elicit an independent factual basis for the offense, the Defendant admitted he knew about the smuggling venture before the Pescamar's departure and that he served as the vessel's mechanic.[2]

---

[2] At the conclusion of the guilty plea proceeding, defense counsel confirmed his belief that the Defendant had entered a knowing, voluntary plea with a full understanding of the consequences.

*3. post-plea events*

In preparing for sentencing, defense counsel had the Defendant examined by a neuropsychologist (Yolanda C. Leon, Psy.D.). After a clinical exam on November 9 and testing, she opined the Defendant was not currently competent, exhibits "significant memory impairment and impaired executive dysfunction" and suspected the Defendant suffered from an "early dementia." She recommended the Defendant be seen by a neurologist for further evaluation.[3] Accordingly, on December 23, a neurologist (Hector J. Cases, M.D.) examined the Defendant. On the basis of a clinical exam and his review of Dr. Leon's report and county jail medical records, Dr. Cases offered these diagnostic impressions: the Defendant exhibits signs consistent with "Mild Cognitive Impairment" and is incompetent because he cannot understand the nature and potential consequences of the proceedings against him. The physician recommended the Defendant undergo a brain MRI with and without contrast, blood work, and a PET scan of the brain.[4]

Because I viewed Dr. Leon's and Dr. Cases's findings at odds with the Defendant's post-arrest statements, his behavior and responses during the plea, and the observations of his codefendants, I committed the Defendant for thirty days under 18 U.S.C. § 4241's scheme so that he could be examined by the Bureau of Prisons forensic experts for a

---

[3] Dr. Leon examined the Defendant again in advance of the June 23, 2011, competency hearing.

[4] Defense counsel later moved for authorization to incur the costs associated with these tests. I denied the motion. *See* doc. 165.

determination of the Defendant's current competency and also at the time of the plea.[5] After about a month's observation, testing, and clinical interviews, their forensic psychologist (Dr. Jorge Luis) opined that the Defendant suffered "some cognitive deficits," but nonetheless demonstrated a rational understanding of the charges against him and could assist his counsel in his defense (see BOP report dated April 18, 2011).

At the competency hearing, Dr. Leon and Dr. Luis testified, and their testimony mirrored their reports. Dr. Leon's essential thrust was that the Defendant's test scores were sufficiently reliable (despite his illiteracy, cultural differences, and validity issues due to test norms scored using English-speaking subjects as opposed to Spanish-speaking test takers) to show he suffered from cognitive impairments. She further opined the Defendant's child-like abilities encouraged compliant behavior. Dr. Luis, on the other hand, questioned the validity of the results, particularly given the Defendant's ability to adapt to his surroundings and function appropriately. This behavior, so Dr. Luis reasoned, served as a more reliable measure of the Defendant's competency.

C. Discussion

1. competency

A person is incompetent to stand trial if "there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally

---

[5] The government submitted interview reports taken of the other three codefendants (doc. 99 at ex. 5). Defendant Daniel-Matos (the captain), who is the Defendant's son-in-law, says although the Defendant lacks any formal education, he is intelligent and a quick learner. Daniel-Matos is teaching the Defendant to read and write. The other two codefendants say the same. All three have known the Defendant for considerable periods. None have observed any deterioration or signs of incompetency.

incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist in his defense." 18 U.S.C. § 4241(a); *United States v. Saingerard*, 621 F.3d 1341, 1343 (11th Cir. 2010). Section 4241 "arguably contemplates" that the burden for demonstrating incompetency lies with the movant, namely, the Defendant. *United States v. Izquierdo*, 448 F.3d 1269, 1277 (11th Cir. 2006) (citing dicta in *Cooper v. Oklahoma*, 517 U.S. 348, 362 (1996)). And the Defendant's burden is to do so by a preponderance of the evidence. *Id.* The competency question is "primarily factual in nature," and when a court faces two permissible views of the evidence, its choice between them cannot be clearly erroneous (the operative standard of review for appellate purposes). *Id.* at 1278.[6]

I find the Defendant failed to meet his burden as I credit Dr. Luis's testimony and reject Dr. Leon's opinions about the Defendant's competency.[7] Of particular note, Dr. Luis specifically questioned the Defendant about the Defendant's understanding of the roles of the judge, prosecutor, and defense attorney and memorialized the Defendant's responses in Spanish. At the evidentiary hearing, Dr. Luis, in Spanish, repeated the Defendant's answers, which clearly showed the Defendant understands the charges he faces, the potential sentence, and the roles of the judge, prosecutor, and defense counsel. Added to this, the Defendant

---

[6] Notably, *Izquierdo's* scenario is similar to here in that the competency issue arose after the defendant pled guilty and served as the basis for arguing that he should be allowed to withdraw his plea.

[7] I am mindful that Dr. Leon is board certified and has advanced training in neuropsychology; Dr. Luis has neither. Irrespective, Dr. Luis has administered over 300 competency evaluations, a number that considerably exceeds Dr. Leon's experience in this specific forensic skill.

informed Dr. Luis of new developments regarding his health since his incarceration (hypertension and high cholesterol). All this, together with the Defendant's ability to navigate MCC Miami (the place of the Defendant's § 4241 commitment), his post-arrest statements, the accounts of his codefendants, and his statements to me during the plea colloquy, convince me that the Defendant is able to understand the nature and consequences of the proceedings against him or to assist in his defense.[8]

### 2. motion to withdraw guilty plea

Pursuant to Fed.R.Crim.P. 11(d)(2)(B), a judge may permit a defendant to withdraw his guilty plea if he "can show a fair and just reason for requesting the withdrawal." In deciding if the defendant has offered such proof, a court should evaluate the "totality of the circumstances." *United States v. Najjar,* 283 F.3d 1306, 1309 (11th Cir. 2002). Four factors guide this analysis: (1) whether close assistance of counsel was available; (2) whether the plea was knowing and voluntary; (3) whether judicial resources will be conserved; and (4) whether the government would be unduly prejudiced. *United States v. Buckles,* 843 F.2d 469, 472 (11th Cir. 1988). In any event, the decision on the matter is committed to the court's sound discretion. *Id.* at 471.

The typical defendant seeking to withdraw his guilty plea expressly states that desire. That is not the case here. Notably, the Defendant did not testify at the hearing to say he had a change of heart. Instead, his defense counsel, duty-bound to represent him effectively and

---

[8] I view the Defendant's August 26, 2010, proffer as evidence of the Defendant's ability to assist his counsel in his defense. Namely, the Defendant followed his counsel's advice and attempted to convince the government that his proffer merited a substantial assistance motion.

zealously, and obligated under § 4241(a) to bring to the Court's attention to the competency issue, raised the question. Yet, nothing about the Defendant's behavior between counsel's appointment and the Defendant's plea alerted defense counsel to the possibility that the Defendant may be suffering from a mental disease or defect that rendered the Defendant unable to understand the nature and consequences of the proceedings. On the contrary, during the plea colloquy, defense counsel opined that the Defendant was competent and the Defendant's plea was made knowingly and voluntarily. When defense counsel retained a psychologist to examine the Defendant primarily for sentencing purposes and received an opinion that the Defendant was incompetent, the result surprised him to a degree. While these circumstances do not decide the issue as to whether the Defendant has presented a "fair and just reason" for his plea's withdrawal, they do add to the "totality of the circumstances."

The Defendant was ably represented and had the close assistance of counsel during his plea, with whom he said he was satisfied. In response to the Court's questioning, the Defendant said he understood the nature of the charges, their elements, the consequences of a guilty plea, the right to a trial, and that he was entering his plea voluntarily. There is a strong presumption that his answers, made under oath, are true. *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994). Because I find the Defendant received close and adequate assistance of counsel and that he entered his plea knowingly and voluntarily, I need not give *Buckles's* remaining two factors considerable weight or particular attention. *United States v. Gonzalez-Mercado*, 808 F.2d 796, 801 (11th Cir. 1987).

 *C. Conclusion*

After evaluating the "totality of the circumstances," it is hereby

**RECOMMENDED:**

1. Defendant's motion to withdraw his guilty plea (doc. 97) be **DENIED**.

IT IS SO REPORTED at Tampa, Florida on June 27, 2011.

_____
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. § 636(b)(1).

cc:   The Honorable Steven D. Merryday
      Counsel of Record